William Henry FLAMER,
Plaintiff/Petitioner,

v.

Darl CHAFFINCH, Raymond P. Callaway, Harold K. Brode, William H. Porter, Defendants,

and

Robert Snyder, Respondent.

Civ. A. No. 87–546–JJF.

United States District Court,
D. Delaware.

June 30, 1993.

1082

Charlene D. Davis, and Joshua L. Simon, of Bayard Handelman & Murdoch, Wilmington, DE, for plaintiff/petitioner.

John K. Welch, Deputy Atty. Gen., Dept. of Justice, Wilmington, DE, for defendants.

Gary A. Myers, Deputy Atty. Gen., Dept. of Justice, Georgetown, DE, for respondent.

## OPINION

FARNAN, District Judge.

Presently before the Court are cross Motions for Summary Judgment filed by the Respondent and the Petitioner in this habeas corpus case filed pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the Respondent's Motion for Summary Judgment will be granted and the Petitioner's Motion for Summary Judgment will be denied.

## I. FACTUAL BACKGROUND [1]

On February 7, 1979 Alberta and Byard Smith (herein referred to as the "Smiths")

---

1. For a more complete factual background, this court refers to the opinion affirming, on direct

were found murdered in their home in Harrington, Delaware. Their nephew, William Henry Flamer ("Flamer") was arrested the same day and charged with their murders. The following day, February 8, 1979, Flamer was taken before a state magistrate at Justice of the Peace Court No. 6 in Harrington, Delaware for his initial appearance. The state magistrate read Flamer the charges lodged against him and advised him of his constitutional rights. *Flamer I*, 490 A.2d at 110; *Flamer IV*, 585 A.2d at 742. Also, at the initial appearance, a State Public Defender was appointed to represent Flamer.[2]

After the initial appearance, Flamer was then taken back to the Delaware State Police Troop No. 5 where he met with his mother. After she left the troop, Corporal Porter, one of the officers who had questioned Flamer the day before, approached Flamer in his cell. *Flamer I*, 490 A.2d at 113–14. Flamer was again read his rights by Corporal Porter, however, Flamer did not request that his recently appointed attorney be present. *Flamer IV*, 585 A.2d at 743. During the course of providing a tape recorded statement to Corporal Porter, Flamer admitted stabbing Byard Smith several times; however, he claimed that Andre Deputy ("Deputy"), who was apprehended with Flamer and eventually charged with the Smiths' murders, actually killed both of the Smiths.

A jury convicted Flamer of the following offenses related to the homicides of the Smiths: (1) four counts of first degree murder; (2) one count of first degree robbery; (3) one count of possession of a deadly weapon during the commission of a felony; and (4) one count of misdemeanor theft. *See Flamer III*. At the close of the trial, Flamer's counsel moved for a judgment of acquittal which was denied. Subsequently, after a penalty hearing was held, the jury voted a sentence of death. Thereafter, Flamer's counsel

moved to vacate the penalties, including the death penalty, on evidentiary, statutory and constitutional grounds, which was also denied. *Flamer IV*, 585 A.2d at 744.

The Delaware Supreme Court upheld the conviction on direct appeal in February 1983 but reserved its ruling on the issues regarding the death sentence. *Flamer I*, 490 A.2d at 112 n. 5, 119. Flamer moved for reargument in the Delaware Supreme Court which was denied and unsuccessfully petitioned the United States Supreme Court to review the decision. *Flamer v. Delaware*, 464 US. 865, 104 S.Ct. 198, 78 L.Ed.2d 173 (1983). In September 1984 the Delaware Supreme Court affirmed the sentence of death that had been imposed. *Flamer I*, 490 A.2d at 120–53. Again, Flamer unsuccessfully sought reargument in the Delaware Supreme Court and review by the United States Supreme Court. *Flamer v. Delaware*, 474 U.S. 865, 106 S.Ct. 185, 88 L.Ed.2d 154 (1985).

In June 1986 Flamer sought post conviction relief pursuant to then Del.Super.Ct.Crim.R. 35. In his petition, Flamer claimed that his trial and appellate counsel had been ineffective. He also raised several other issues that had been decided adversely to him on his prior direct appeal. The Delaware Superior Court, after holding a hearing, denied the relief sought by Flamer. *See Flamer III*.

On appeal, the Delaware Supreme Court vacated the decision of the Superior Court and remanded the matter for Flamer to file a new application under the new state statute for post conviction relief, Del.Super.Ct.Crim.R. 61. *Flamer v. Delaware*, 1988 WL 235535 (Del.Supr.1988); *Flamer IV*, 585 A.2d at 744. Delaware Superior Court Criminal Rule 35 was replaced by Delaware Superior Court Criminal Rule 61 which contained new provisions related to

appeal, the convictions and sentences, *Flamer v. Delaware*, 490 A.2d 104 (Del.Supr.1983) *cert. denied* (guilt phase) 464 U.S. 865, 104 S.Ct. 198, 78 L.Ed.2d 173 (1983), *cert. denied* (penalty phase) 474 U.S. 865, 106 S.Ct. 185, 88 L.Ed.2d 154 (1985) (hereinafter referred to as *"Flamer I"*), the memorandum opinion of the Delaware Superior Court denying post-conviction relief, *State v. Flamer*, 1989 WL 70893 (Del.Super. June 16, 1989) (hereinafter referred to as *"Flamer III"*),

and the opinion issued by the Delaware Supreme Court affirming the Superior Court's denial of post-conviction relief, *Flamer v. Delaware*, 585 A.2d 736 (Del.Supr.1990) (hereinafter referred to as *"Flamer IV"*).

2. Dennis Reardon, Esquire ("Reardon") from the State of Delaware Office of the Public Defender was assigned to represent Flamer.

post-conviction relief. Rule 61 was intended to apply "to all pending and future post conviction relief applications unless" it was unfeasible or unjust.[3]

In accordance with the Delaware Supreme Court record, Flamer filed a new motion for post conviction relief in the Delaware Superior Court. Again, in June 1989, the Delaware Superior Court held an evidentiary hearing and denied all of Flamer's claims for relief. *See Flamer III.* On appeal, the Delaware Supreme Court in December 1990 affirmed the Superior Court decision. *See Flamer IV.* The Delaware Supreme Court found that the claims had been resolved in prior litigation or were barred due to procedural default. *Flamer IV,* 585 A.2d at 745–53. In its decision, the Supreme Court rejected Flamer's claims of ineffective assistance of counsel. The Supreme Court indicated that Flamer had failed to establish that the representation provided was unreasonable to the extent that it would undermine the confidence one could have in the verdicts and sentences. *Flamer IV,* 585 A.2d at 753–58. Thereafter, Flamer filed this action seeking federal habeas review of his convictions and the death sentence imposed upon him.

## II. DISCUSSION

The Court will review each claim of Petitioner and the answer of Respondent in turn.

### A. THE EDWARDS v. ARIZONA CLAIM

The issue presented here is whether the trial court erred in admitting into evidence a taped statement of an interrogation of Flamer by Corporal Porter, a Delaware State Police detective. In the statement, Flamer admitted to planning the robbery and stabbing of Byard Smith and disclosed the location of one of the murder weapons. This statement was made during a police initiated interrogation that occurred after Flamer's Initial Appearance in the state Justice of the Peace Court where the state magistrate appointed a State Public Defender to represent Flamer "before this court, or other court, in all matters thereof, unless and until received

---

**3.** Rule 61 became effective on January 1, 1988.

by order of a higher Court." *Flamer IV,* 585 A.2d at 742 & n. 1.

Flamer contends that the appointment of counsel by the state magistrate coupled with his request to make a phone call to his mother regarding an attorney during his initial detention was sufficient to invoke his Fifth Amendment right to counsel. Thus, Flamer claims that his Fifth and Fourteenth Amendment rights were violated when the trial court decided to admit the taped statement and fruits of that statement into evidence at his trial. According to Flamer, he had invoked his right to counsel prior to the police initiating the interrogation that led to his giving the statement and, therefore the admission of the statement violated the law as announced in *Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981).

Although *Edwards* is not applicable retroactively, *Solem v. Stumes,* 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984), it may be applicable to cases that were pending on appeal at the time of the decision. *Shea v. Louisiana,* 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985). Flamer's conviction and sentencing were on appeal at the time the *Edwards* decision was handed down and therefore the law as announced in *Edwards* may be applicable to Flamer's case. It is important, however, to reiterate the holding of *Edwards* in order to determine its applicability to the issues raised by Flamer. In *Edwards* the United States Supreme Court held:

[a]nd we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused him-

self initiates further communication, exchanges, or conversations with the police.

. . . . .

We reconfirm these views and, to lend them substance, emphasize that it is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel.

*Edwards*, 451 U.S. at 484–85, 101 S.Ct. at 1884–85.

The Delaware Superior Court in considering Flamer's petition for post-conviction relief under Criminal Rule 61 held that Flamer's actions, although sufficient to invoke his Sixth Amendment right to counsel during the adjudicatory process, was not an adequate invocation of his Fifth Amendment rights against self-incrimination and, therefore *Edwards* was inapplicable. *Flamer III,* 1989 WL 70893, *9. Further, the Delaware Superior Court held that an expansion of *Edwards* to the extent argued by Flamer was not appropriate as it was not dictated by legal precedent existing at the time Flamer's convictions became final. *Flamer III,* 1989 WL 70893, *9–10. On appeal, the Delaware Supreme Court refused to consider Flamer's *Edwards* claim on the merits. Rather, the Supreme Court held that Flamer was procedurally barred from raising the *Edwards* claim as he had failed to raise it on direct appeal. *Flamer IV,* 585 A.2d at 747.

### 1. The "New Rule Argument"

The Respondent answers that he is entitled to summary judgment on Petitioner's *Edwards* claim. First, Respondent contends that the appointment of counsel for Flamer at his initial appearance before the state magistrate did not trigger the protections afforded by *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880. According to the Respondent, Flamer seeks to invoke a "new rule" and this is not cognizable on his request for habeas relief. Second, Respondent contends that Flamer is now barred from raising this claim as the state appellate court found that he had procedurally defaulted on this issue by failing to raise it on direct appeal.

According to Respondent, the United States Supreme Court has consistently required that to properly invoke one's right to counsel under the Fifth Amendment and *Edwards* it must be done in the context of a custodial interrogation, not in an anticipatory style or in response to an examination before a committing magistrate. The Respondent argues that Flamer's request for counsel at his initial appearance did not constitute a *Miranda* invocation and therefore is not sufficient to trigger the protections afforded by the *Edwards* decision. As a result, Respondent concludes that if the Court were to consider Flamer's *Edwards* claim it would require the application of a "new rule". According to the Respondent, unless two limited situations exist, a court, considering a petition for federal habeas relief, should not entertain claims which are based on a rule that would have been new at the time the convictions became final.

Flamer, responds that application of *Edwards* to the facts as alleged by him would not constitute a "new rule." First, Flamer argues that the application of the *Edwards* rule to a Sixth Amendment invocation of the right to counsel as opposed to a Fifth Amendment right against self incrimination to which *Edwards* spoke does not create a "new rule." Thus, Flamer asserts a federal court on habeas review may retroactively apply the rule even if at the time the petitioner's conviction became final it would not have felt compelled by existing precedent to do so. *Saffle v. Parks,* 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990).

In support of his position, Flamer contends that there was an evolution to support an application of *Edwards* to his case clearly present in both the federal system and the Delaware system prior to his convictions becoming final. According to Flamer, courts were applying a rule equivalent to that announced in *Edwards* prior to and contemporaneously with Flamer's direct appeal. Finally, Flamer argues that prior to Flamer's convictions becoming final, courts had applied the *Edwards* standard in the context of protecting an accused's Sixth Amendment rights as well as Fifth Amendment rights.

Flamer further contends that the facts upon which the Respondent relies to support its "new rule" argument are not properly supported by the state court record as required under 28 U.S.C. § 2254. Flamer points specifically to several times in the state court proceedings where he testified he requested a phone call while in custody prior to being brought before the state magistrate. According to Flamer, both prior to and at his initial appearance he made requests to make a phone call and:

> Apparently, the Delaware Supreme Court felt constrained to note Flamer's Rule 61 testimony about his requests to call about an attorney while en route to Troop 6, but chose to ignore it. Rather, the [Delaware] Supreme Court reaffirmed its earlier "findings of fact" that Flamer never invoked his *Miranda* right to counsel. *Flamer,* 585 A.2d at 746–47. The earlier finding had been made on direct appeal when there was no record of Flamer's request for counsel at the initial appearance. In fact, the Court had observed on direct appeal:
>
>> Nor is there any contention that defendant from the moment of arrest until contact was made with him through the Public Defender's Office, ever attempted to invoke any of the *Miranda* rights. *Flamer,* 490 A.2d at 114.

(Docket Item 206, at 22). Thus, according to Flamer, the state court record does not adequately support the findings and, therefore, they cannot be presumed correct as the Respondent urges.

## 2. State Procedural Default

The Respondent also claims that Flamer is now barred from having his *Edwards* claim considered because the state supreme court refused to reach the merits of his argument due to his failure to raise it on direct appeal. Respondent answers that in order to have the Court now consider this claim, Flamer must show cause and prejudice. According to the Respondent, Flamer cannot demonstrate cause and prejudice for his appellate counsel's failure to raise this claim on direct appeal or that a "fundamental miscarriage of justice" will result absent consideration of the claim by this Court. Thus, Respondent

concludes review of the *Edwards* claim by this Court is barred.

Flamer makes several arguments as to why his claim should not be procedurally barred from federal habeas review. First, Flamer argues that the Delaware Supreme Court's discussion of his *Edwards* claim was not an independent and adequate state ground. Second, at the time the state supreme court relied on Rule 61 for its finding of a procedural default, it was a novel rule that was not in effect at the time Flamer purportedly waived the claim. Third, even if Rule 61 could act as a procedural bar, Flamer asserts he clearly could show cause and prejudice from not having *Edwards* applied, specifically, he cites the ineffectiveness of his trial counsel and the failure to receive the required remand and suppression of the tape.

Fourth, Flamer contends even if the "cause and prejudice" standard could not be met, it is clear that a fundamental miscarriage of justice resulted from the refusal of the state court to review this claim during the post-conviction relief proceedings.

## 3. Discussion

The Court concludes, based on the submissions of the parties and their argument that the Respondent is entitled to summary judgment with respect to the *Edwards* claim. In this regard, as a court sitting in a habeas review of state court proceedings, the Court is bound by the factual findings of the state court unless they are not adequately supported by the state court record. 28 U.S.C. § 2254(d).

### a. State Court Factual Findings

The Court finds that it is bound by the state court findings regarding Flamer's request for an attorney. Although there is conflicting testimony in the record regarding his request for an attorney, a district court in a habeas review is not in a position to make credibility determinations and findings based on conflicting testimony. Rather, the state court, with the opportunity to assess the candor and credibility of the witnesses, is the proper forum for making those determinations. Therefore, this Court is bound by the finding of the state court that the Petitioner

had not attempted to invoke his *Miranda* rights prior to his contact with the State Public Defender's Office.

### b. The Rule 61 Procedural Bar

The Court concludes that Flamer is procedurally barred from raising a claim under *Edwards*. The Court concludes there is adequate support in the state court record for the finding that Flamer had notice of the possible *Edwards* claim as early as the time his case was on direct appeal. Thus, the *Edwards* claim could have been brought at anytime after 1981 when the *Edwards* decision was handed down. *Flamer IV*, 585 A.2d at 746–47. The Delaware Supreme Court held that Flamer was procedurally barred, pursuant to Superior Court Criminal Rule 61(i)(3), from raising the *Edwards* claim in the post conviction relief proceeding absent a showing of cause and prejudice. *Flamer IV*, 585 A.2d at 747.

In this regard, the Delaware Supreme Court first considered Flamer's allegations that it was his attorney's error for failing to raise the *Edwards* claim on appeal. The Delaware Supreme Court held that any failure of Flamer's attorney was insufficient to establish cause to cure the procedural default. *Flamer IV*, 585 A.2d at 747. The Delaware Supreme Court also analyzed the question of prejudice, although it stated it was unnecessary to do so. *Flamer IV*, 585 A.2d at 748. It was in this context that the Delaware Supreme Court turned to the possibility of success that Flamer might have in asserting an *Edwards* claim. *Id.* at 747. The Delaware Supreme Court held that Flamer was unable to show that, under the laws existing at the time his convictions became final, there would have been a substantial likelihood of a different result and, therefore, Flamer could not establish the necessary prejudice to excuse the procedural default. *Id.*

■ In a federal habeas review, a procedural bar requires a finding that the procedural default is based on independent and adequate state grounds. *Bond v. Fulcomer*, 864 F.2d 306, 311 (3d Cir.1989), citing, *Reynolds v. Ellingsworth*, 843 F.2d 712, 717 (3d Cir.), *cert. denied*, 488 U.S. 960, 109 S.Ct.

403, 102 L.Ed.2d 391 (1988). Thus, only if the petitioner can show cause for the noncompliance and actual prejudice resulting from the alleged violation will habeas review be proper. *Id.* (quoting *Neely v. Zimmerman*, 858 F.2d 144, 147 (3d Cir.1988)). Courts invoke a three part test to determine if the basis for denying review was on independent and adequate state grounds. In this regard, the district court must determine if:

> (1) the state procedural rule speaks in unmistakable terms; (2) all state appellate courts refused to review the petitioner's claims on the merits, and (3) the state courts consistently apply the procedural rules.

*Id.* at 312.

There can be no question that Delaware's rule speaks in unmistakable terms. Delaware Superior Court Criminal Rule 61(i)(3) states:

> Procedural Default. Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this Court, is thereafter barred, unless the movant shows
>
> (A) cause for relief from the procedural default and
>
> (B) prejudice from violation of the movant's rights.

Sup.Ct.Crim.R. 61(i)(3). Likewise, there is no question that the Delaware state courts consistently apply Rule 61(i)(3). The cases are now overwhelming in which the state courts in Delaware have found a habeas petitioner to have procedurally defaulted on the basis of a failure to raise the asserted ground on direct appeal. *Johnson v. State*, 460 A.2d 539, 540–541 (Del.Super.1983); *Younger v. State*, 574 A.2d 264 (Del.Supr.1990); *Wilson v. State*, 574 A.2d 264 (Del.Supr.1990) (Text in Westlaw); *Younger v. State*, 580 A.2d 552 (Del.Supr.1990); *Riley v. State*, 585 A.2d 719 (Del.Supr.1990); *Webster v. State*, 609 A.2d 669 (Del.Supr.1992) (Text in Westlaw); *Clark v. State*, 622 A.2d 1094 (Text in Westlaw) (1993). The only issue that remains then is whether "all *state appellate courts* refused to review the petitioner's claims on the merits." *Bond v. Fulcomer*, 864 F.2d at 312. In the

present case, it is unchallenged that the Delaware Supreme Court is the only state appellate court and that it refused to review Flamer's *Edwards* claim on the merits.

■ On this record, the Court must conclude that the procedural default found by the state court rests on adequate and independent state grounds and is entitled to recognition in this habeas review. Thus, the Court concludes that under the strict language of *Bond* and consistent with the purpose of recognizing a procedural bar[4], the Court is precluded from considering the merits of the *Edwards* claim raised by Flamer.

A petitioner may still have his claim considered, however, on habeas review if the petitioner can show "cause" for the default and "prejudice" attributable thereto. *Bond v. Fulcomer*, 864 F.2d at 310. As recently stated by the United States Supreme Court:

> Unless a habeas petitioner shows cause and prejudice, *see Wainwright v. Sykes*, 433 U.S. 72 [97 S.Ct. 2497, 53 L.Ed.2d 594] (1977), a court may not reach the merits of: (a) successive claims which raise grounds identical to grounds heard and decided on the merits in a previous petition; (b) new claims not previously raised which constitute an abuse of the writ; or (c) procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims. These cases are premised on our concerns for the finality of state judgments of conviction, and the significant costs of federal habeas review.
>
> We have previously held that even if a state prisoner cannot meet the cause and prejudice standard a federal court may hear the merits of the successive claims if the failure to hear the claims would constitute a "miscarriage of justice." In a trio of 1986 decisions, we elaborated on the miscarriage of justice or "actual innocence," exception ... [t]he miscarriage of justice exception would allow successive claims to be heard if the petitioner "establish[is] that

under the probative evidence he has a colorable claim of factual innocence." In the second of these cases we held that the actual innocence exception also applies to procedurally defaulted claims.

*Sawyer v. Whitley*, —— U.S. ——, —— —— ——, 112 S.Ct. 2514, 2518–19, 120 L.Ed.2d 269 (1992) (citations omitted). As a result, if Flamer can show "cause and prejudice" or manifest injustice, the Court can reach the merits of Flamer's *Edwards* claim.

Flamer argues that the change in the Delaware post-conviction relief rule between the time of his direct appeal to the state supreme court and his seeking post-conviction relief is sufficient cause to excuse his procedural default. Although cause is a difficult threshold question, the Court believes that the change in Delaware's post-conviction relief provisions between the time of Flamer's direct appeal and his motion for post-conviction relief is sufficient to satisfy the first prong of the *Wainwright v. Sykes* test of cause and prejudice. To conclude otherwise would be to prohibit the accused from a consistent application of the laws in effect at the time of his trial and subsequent collateral relief proceedings without notice a possible change in his rights.

In this case, at the time of his direct appeal, Delaware's post-conviction relief proceedings were governed by Superior Court Criminal Rule 35 which did not limit either the number of post-conviction relief filings nor the time in which one could raise a claim of a constitutional infringement. The only restriction on a post conviction relief application was that the time for taking a direct appeal had elapsed. As such, when Delaware's rule governing post-conviction relief was replaced with Superior Court Criminal Rule 61, Flamer's direct appeal had already been presented in the state court. The application of the new procedural rule by the state court to issues Flamer had not previously raised on direct appeal impermissibly cut-off rights, that at the time he presented his appeal Flamer was not aware could later

---

**4.** The exhaustion requirement and the procedural bar are designed to assure that a state's highest court has the opportunity to consider the federal claim prior to the habeas court conducting a review. Were this Court not to acknowl-edge the procedural default recognized by the Delaware Supreme Court the purposes served by the rules governing habeas review would be defeated.

be barred for failing to raise. For this reason, the Court concludes that Flamer has sufficiently shown cause for the default and the Court will now consider if Flamer is capable of establishing that actual prejudice has resulted from the default. *Bond v. Fulcomer,* 864 F.2d at 310.

In order to show prejudice, Flamer must be able to demonstrate that there was a "substantial likelihood" that, if he had pressed the *Edwards* claim the outcome of his case would have been different. *United States v. Frady,* 456 U.S. 152, 172–74, 102 S.Ct. 1584, 1596–97, 71 L.Ed.2d 816 (1982). Thus, Flamer must be able to show that had he asserted this challenge that "he might not have been convicted." *Reed v. Ross,* 468 U.S. 1, 12, 104 S.Ct. 2901, 2908, 82 L.Ed.2d 1 (1984). Flamer is unable to make such a showing.

In reaching a decision on this question, the Court is bound by the law existing at the time Flamer's convictions became final and not as it evolved in subsequent cases. *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), *reh'g denied,* 490 U.S. 1031, 109 S.Ct. 1771, 104 L.Ed.2d 206 (1989). Although Flamer, in his brief cites the Court to several cases which purportedly support his position, there is more authority for finding that the ability to pursue his *Edwards* claim would have been to no avail. *See Flamer IV,* 585 A.2d at 748 and cases cited therein. There is absolutely no scenario presented that persuades the Court that Flamer would have been ultimately successful in avoiding conviction had he pursued his *Edwards* claim. Thus, there is no basis for the Court to find that Flamer has demonstrated prejudice sufficient for the Court to consider the merits of his *Edwards* claim.

Lastly, a petitioner may have his procedurally barred claims considered on the merits by a federal court on habeas review if he is able to establish that a failure to hear the claims would constitute a "miscarriage of justice." *Sawyer v. Whitley,* —— U.S. at ——, 112 S.Ct. at 2519. To establish the existence of a "miscarriage of justice" Flamer must show that there is probative evidence that he has "a colorable claim of factual innocence." *Id.* Flamer makes no argument that he is

able to meet this standard and the Court finds there is no basis for the application of this exception to the procedural bar present.

As a result, the Court concludes that it is procedurally barred from reviewing Flamer's *Edwards* claim.

## B. THE *MICHIGAN v. JACKSON* CLAIM

In his petition, Flamer contends that the admission into evidence at trial of his taped statement made following his initial appearance in the state Justice of the Peace Court violated his Sixth Amendment right to counsel. On direct appeal, before *Jackson* had been decided, the Delaware Supreme Court concluded that Flamer's statement was admissible because he had knowingly waived his right to the assistance of counsel. *Flamer I,* 490 A.2d at 112–115. When Flamer subsequently raised the *Jackson* argument in his state motion for post-conviction relief, the state court refused to reconsider its prior decision. *Flamer IV,* 585 A.2d at 745–46, 748–50.

The Respondent concedes that if Flamer were tried today *Jackson* would bar the admission of the statement Flamer made following his initial appearance. Thus, according to the Respondent, the only question is whether or not *Jackson* should be applied retroactively. Again the Respondent, relying on the distinction of a "new rule" analysis, contends that because *Jackson* announced a "new rule" it cannot be applied to Flamer's case where the convictions and sentences were final almost eight months before the ruling in *Jackson* was announced. The Respondent further argues that under pre-*Jackson* standards, Flamer had waived his Sixth Amendment right to counsel, as found by the state court, before making the incriminating taped statement.

Flamer, on the other hand, contends that *Jackson* was not a "new rule." Flamer argues that *Jackson* did not create a "new rule" because had the trial court considered Flamer's argument the court would have been compelled to suppress the statement based on existing precedent. Referring to both the *Brewer v. Williams,* 430 U.S. 387,

97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), and *Deputy v. State*, 500 A.2d 581 (Del.Supr.1985) cases, Flamer argues that had the state court only known of Flamer's invocation of his right to counsel at his appearance before the state magistrate the state court would have been compelled, under then existing law, to suppress the taped statement. Further, Flamer points to cases in other circuits where evidence was suppressed, if it was obtained from police initiated interrogation following the accused's invocation of his Sixth Amendment rights. Thus, according to Flamer, *Jackson* does not represent a new rule and should be applied to suppress his taped statement as a *per se* violation of the rule announced in *Jackson*. With respect to the retroactive applicability of *Jackson*, Flamer argues that although the United States Supreme Court has not determined that *Jackson* should apply retroactively, at least one court has determined, upon a balancing of factors, that it could properly be applied to the facts of the habeas proceeding before it. *Fleming v. Kemp*, 837 F.2d 940, 947 (11th Cir.1988).

Moreover, Flamer argues that even if this Court were to determine that *Jackson* represented a "new rule", the fundamental fairness required in a criminal proceeding requires this Court to retroactively apply the rule of *Jackson*. Flamer asserts that given the unmistakable goal of achieving fairness and accuracy of statements made by an accused, the *Teague*, 489 U.S. 288, 109 S.Ct. 1060, exception to the "new rule" bar must be applied here, thus permitting retroactive application of *Jackson* to the facts now known in this case.

Finally, Flamer contends that the findings made by the state courts must be set aside in this court's determination of the legality of his waiver of counsel because the finding that Flamer had intentionally waived his right to counsel was predicated on "a record bereft of the highly relevant evidence that Flamer had asked for and been appointed counsel at his initial appearance." (Docket Item 206, at 37).

Flamer urges the court to deny the Respondent's Motion for Summary Judgment because even if *Jackson* is found not to ap-

ply, Flamer argues the evidence establishes he did not waive his right to counsel prior to the taped statement being made. Flamer presents the court with the factual record available to the state courts at the time they found that the waiver was voluntary and Flamer concludes that the state courts failed to recognize Flamer's repeated requests for counsel and thus, he argues the state court finding is unsupported by the available record. According to Flamer, although he replied yes to each of the questions related to whether he understood his *Miranda* rights, he never intentionally and knowingly relinquished his right to counsel. Flamer contends that this evidence when coupled with the presumption against waiver afforded by *Brewer* clearly creates a genuine issue of material fact, which requires the Court to deny Respondent's Motion for Summary Judgment.

### 1. Discussion

The Court must first determine the applicability of *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), to this case and then determine the effect of the purported waiver of rights by Flamer. In analyzing *Jackson's* applicability, the Court will first consider if the rule announced in *Jackson* is a "new rule." Second, the Court will then consider the retroactive applicability of the *Jackson* rule. Finally, if none of those determinations are dispositive, the Court will turn to the question of the validity of Flamer's waiver.

#### a. Jackson New Rule/Retroactivity

■ The issue of whether the *Jackson* decision constitutes a "new rule" is a question of law that the Court reviews *de novo*. *Rushen v. Spain*, 464 U.S. 114, 120, 104 S.Ct. 453, 456, 78 L.Ed.2d 267 (1983). Likewise the issue of the retroactive application of *Jackson* is also subject to the *de novo* standard. *Id.* The Court concludes that the rule announced in *Michigan v. Jackson* was a "new rule" and should not be applied retroactively under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *See Self v. Collins*, 973 F.2d 1198, 1207 (5th Cir.1992), *cert. denied* —— U.S. ——, 113 S.Ct. 1613, 123 L.Ed.2d 173 (1993);

*Henderson v. Singletary,* 968 F.2d 1070, 1072 (11th Cir.), *cert. denied* —— U.S. ——, 113 S.Ct. 621, 121 L.Ed.2d 554 (1992); *Collins v. Zant,* 892 F.2d 1502, 1510–12 (11th Cir.1990), *cert. denied* 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 180 (1990).[5] Support for this conclusion can also be found in the case of *Solem v. Stumes,* 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1983), where the United States Supreme Court determined that the rule announced in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), was a new rule and should not be retroactively applied. In *Solem* the Supreme Court stated:

> *Edwards* nonetheless did establish a new rule. We do not think that the police can be faulted if they did not anticipate its *per se* approach. Prior to *Edwards,* the emphasis in our cases had been on whether, as an individual, case-by-case matter, a waiver of the right to counsel had been knowing, voluntary, and intelligent ... It does not in any way cast doubt on the legitimacy or necessity of *Edwards* to acknowledge that in some cases a waiver could be knowing, voluntary, and intelligent even though it occurred when the police recommenced questioning after an accused had invoked the right to counsel.

*Id.* 465 U.S. at 647–48, 104 S.Ct. at 1344. (citations omitted). Further, in announcing that *Edwards* should not be retroactively applied, the Supreme Court stated:

> The same logic argues against retroactive application of *Edwards,* which, in light of the disagreements among lower courts, laid down additional guidelines for the implementation of *Miranda.*
>
> . . . . .
>
> In short, it cannot be said that our decision in *Edwards* had been "clearly" or "distinctly" foreshadowed. In these circumstances, we consider the reliance interest compel-

ling, even though *Edwards* did not overrule a specific decision.

. . . . .

In sum, *Edwards* has little to do with the truthfinding function of the criminal trial, and the rights it is designed to protect may still be claimed by those whose convictions preceded the decision. It would be unreasonable to expect law enforcement authorities to have conducted themselves in accordance with its bright-line rule prior to its announcement; and retroactive application would disrupt the administration of justice. Weighing these considerations, we conclude that *Edwards* should not be applied retroactively.

*Id.* at 649–650, 104 S.Ct. at 1345.

Applying the reasoning utilized in *Solem v. Stumes* the Court concludes that *Jackson* announced a new rule with respect to a waiver of Sixth Amendment rights as did *Edwards* in the context of Fifth Amendment rights. Prior to each decision, the clear precedent was to do a case by case analysis of the voluntariness of the waiver of rights for each of the constitutional protections. The bright line rule provided by *Jackson* was no less a change in the approach taken by courts regarding the waiver of Sixth Amendment rights than was the "new rule" announced in *Edwards.*

Having decided that the principles found in *Jackson* are not available to Flamer the Court must turn to the question of whether Flamer's waiver of his rights was voluntary under the standard applicable at the time of his interrogation by Corporal Porter.

### b. Validity of Waiver

"Federal habeas corpus serves to ensure that state convictions comport with the federal law that was established at the time the petitioner's conviction became final." *Sawyer v. Smith,* 497 U.S. 227, 239, 110 S.Ct. 2822, 2830, 111 L.Ed.2d 193 (1990). Therefore, it is necessary to consider the law re-

---

5. Flamer asks the Court to do a balancing of factors analysis as undertaken by the Court in *Fleming v. Kemp,* 837 F.2d 940, 947 (11th Cir. 1988). This was the first case to be considered by the Eleventh Circuit in determining the retroactive applicability of *Jackson.* Since that decision, the Eleventh Circuit has abandoned the balancing approach and declared that *Jackson* is not to be retroactively applied. The only other circuit to consider the applicability of *Jackson* on habeas review was the Fifth Circuit which concluded, without analysis, that it was not to be applied retroactively.

garding the validity of a waiver at the time that Flamer's convictions became final.

A determination that petitioner's waiver of his Sixth Amendment right to counsel was voluntary and knowing is a determination that the federal court in a habeas proceeding must make independent of the state court's conclusion on the matter. *See Riddick v. Edmiston,* 894 F.2d 586, 589 (3d Cir.1990). While making the determination of whether the waiver was knowing, voluntary and intelligent, *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), all reasonable presumptions must be made against finding a waiver of constitutional rights. *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). Further, the determination requires "application of constitutional principles to the facts as found." *Brewer,* 430 U.S. at 403, 97 S.Ct. at 1242, quoting, *Brown v. Allen,* 344 U.S. 443, 507, 73 S.Ct. 397, 446, 97 L.Ed. 469 (1953) (Frankfurter, separate opinion).

For a waiver of the Sixth Amendment right to counsel to be valid, the state must prove "an intentional relinquishment or abandonment of a known right or privilege". *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). The waiver inquiry is dependent "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused". *Johnson v. Zerbst,* 304 U.S. at 464, 58 S.Ct. at 1023.

The Court is convinced, after reviewing the state record, that there is nothing to indicate that Flamer's taped statement was a result of coercion or lacked the indicia of a voluntary waiver of his already invoked right to counsel. In considering this claim, the Court is bound by the findings of the state

court so long as they are supported by the record. It is only the application of those facts to the proper standard of waiver that is to be conducted independently of the state court assessment.[6]

The facts, as found by the state court may be summarized as follows:

> There is no issue raised by defense counsel in this appeal of any physical or abusive tactics of the police during interrogation and custody although we are mindful and consider as a part of the totality of circumstances, the testimony of defendant as to his fear of retribution, the failure of the police to give him alcohol and cigarettes, to provide him with a warm comfortable place to sleep or permit him to call his mother.

. . . . .

> [w]e see the defendant as a twenty-five year old male who reached the eleventh grade of school, a convicted felon, and one who at the outset informed the police he knew his rights. There is no contention that he was not on numerous occasions given his constitutionally required rights as set forth in *Miranda v. Arizona,* 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966). Nor is there any contention that defendant from the moment of arrest until contact was made with him through the Public Defender's office, ever attempted to invoke any of the *Miranda* rights. Instead, when confronted with the physical evidence seized by the police at his home, the blood on the coat he was wearing when he was arrested, the blood under his fingernails, and the articles belonging to the victim Byard Smith taken from one of his companions at the time of arrest, defendant volunteered fictitious stories of his complicity in the crimes while at the same time denying that he was guilty of killing anyone. He first told the police he was

6. Although not binding on the Court, the Court finds illuminating the statement of the Delaware Supreme Court:

> The confession given on tape by defendant adds little to what the police already knew about this case except to clarify defendant's actual participation and locate one of the murder weapons. The tape of defendant's confession is replete with previously verified detail, and the entire tenor of the interrogation as one

> listens to the tape evidences a voluntary trustworthy statement of truth and personal involvement in the heinous murder of defendant's own aunt and uncle by marriage. We are fully satisfied that defendant knowingly, intelligently and voluntarily waived any Sixth and Fourteenth Amendments right to counsel he might have had.

*Flamer I,* 490 A.2d at 115.

home asleep, that Andrew Deputy aroused him, and that he went to the murder scene to help Deputy take the fruits of the murder to defendant's house. Defendant next told the police that he, Johnny Christopher and Andrew Deputy, had gone into the victims' home, and that it was Johnny who did the stabbing. In the entire record of this case there appears to be no time except initially when he claimed to be home asleep, that defendant denies his participation in the robberies and murders, although throughout, including the taking of his recorded statement, he steadfastly denies actually inflicting the fatal wound upon either victim.

*Flamer I,* 490 A.2d at 114. There is nothing in the record that would permit this Court to find anything but a knowing, voluntary and intelligent relinquishment of a known right. Although not persuasive under today's law, the fact that Flamer responded affirmatively each time he was asked about his individual *Miranda* rights prior to answering any of the police officer's questions does lend further support to the conclusion that, considering the totality of circumstances, Flamer intentionally abandoned his known right to counsel

## C. THE DOUBLE JEOPARDY CLAIM

Flamer was convicted of two counts of intentional murder (11 Del.C. § 636(a)(1)) as well as two counts of felony murder in the first degree with robbery as the underlying predicate felony (11 Del.C. § 636(a)(2)). At the same trial, Flamer was also convicted and separately sentenced for robbery (11 Del.C. § 832(a)(1)). Flamer contends that to be convicted and sentenced both for robbery and for felony murder with the predicate offense being the same robbery violates the Double Jeopardy Clause of the United States Constitution. This issue was raised in the state courts. *Flamer I,* 490 A.2d at 110–112.

The Respondent answers that Flamer's position regarding the Double Jeopardy Clause cannot withstand scrutiny. According to the Respondent, the Double Jeopardy Clause simply prevents the sentencing court from prescribing greater punishment than the legislature intended. The Respondent contends that the Delaware General Assembly intend-

ed separate convictions and punishments for robbery and for felony-murder arising during a robbery and therefore, convictions and sentences for each is appropriate.

Flamer contends that the Fifth Amendment Double Jeopardy Clause of the United States Constitution prohibits punishing an individual more than once for the same offense within a single proceeding unless the legislature clearly expressed an intent that multiple punishments be imposed. *Whalen v. United States,* 445 U.S. 684, 688, 100 S.Ct. 1432, 1435, 63 L.Ed.2d 715 (1980); *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). Thus, Flamer argues the Fifth Amendment requires the Court to inquire into the legislative intent to determine whether multiple sentences for the same offense could be imposed.

Flamer asserts that there is no clear expression by the Delaware legislature to impose double punishment for a lesser included offense. Flamer further contends that because each element of robbery had to be proven in order to establish the felony murder conviction, his conviction and sentence for both robbery and felony murder violated his Fifth Amendment right against double jeopardy and must be set aside.

### 1. Discussion

The Respondent contends that this issue is not reviewable by this Court because the state courts have determined the appropriateness of permitting a person to be convicted of both the robbery and felony-murder when appropriate pursuant to 11 Del.C. § 206. Flamer contends that the Delaware Supreme Court's interpretation of 11 Del.C. § 206 is subject to habeas review because their construction is incorrect as a matter of law and acts to deprive Flamer of his fundamental constitutional rights.

The Court is bound by a state's interpretation of its own laws. Thus, the intent of the Delaware legislature is not before this court on habeas review. As stated in *Missouri v. Hunter:*

"[t]he [state] Supreme Court has construed the two statutes at issue as defining the same crime. In addition, the [state]

Supreme court has recognized that the legislature has intended that punishment for violations of the statutes be cumulative. We are bound to accept the [state] court's construction of that State's statutes. However, we are not bound by the [state] Supreme Court's legal conclusion that these two statutes violate the Double Jeopardy Clause.

. . . . .

Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger,* a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

459 U.S. 359, 368, 103 S.Ct. 673, 679 (citations omitted).

Thus, as required by *Hunter* the Court accepts the conclusion of the Delaware courts regarding the legislative intent underlying the subject statutes. The Court's singular obligation on habeas review is to assure that the intent as found by the Delaware courts comports with the guarantees of the Fifth Amendment against double jeopardy. On this question, the Court concludes that the penalty imposed for the prohibited conduct was proscribed by two separate statutes and that each statute was meant to have a different sanction imposed for a violation. Thus, the Court concludes the separate penalties imposed upon Flamer for the robbery and the felony murders are appropriate and do not violate the Fifth Amendment Double Jeopardy Clause of the United States Constitution.

## D. THE AGGRAVATING CIRCUMSTANCES CLAIM

During the penalty hearing, the trial court instructed the jury on four "statutory aggravating circumstances." *See* 11 Del.C. § 4209(e)(1)(j), (k), (n) and (p) (1974, 1978 Supp.). Thereafter, the jury found that all

four aggravating circumstances existed. *Flamer I,* 490 A.2d at 126.

On direct appeal, the Delaware Supreme Court held that one of the aggravating circumstances (11 Del.C. § 4209(e)(1)(n)) was unconstitutionally vague, *Flamer I,* 490 A.2d at 131, and that two of the circumstances overlapped (11 Del.C. § 4209(e)(1)(j) and (p)) *Flamer I,* 490 A.2d at 125. However, the Delaware Supreme Court found that Delaware's death penalty statute was styled on the Georgia scheme and considered the then recent decision in *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). After reviewing *Zant,* the Delaware Supreme Court refused to overturn the death sentences imposed upon Flamer. The Delaware Supreme Court held that any error that may have occurred with regard to the required finding of aggravating circumstances was harmless given the amount of admissible evidence present. *Flamer I,* 490 A.2d at 136. During its consideration of Flamer's post-conviction relief proceedings appeal the Delaware Supreme Court refused to reconsider the position taken earlier by the court on direct appeal. *Flamer IV,* 585 A.2d at 753.

The Respondent answers that the death penalty statute in existence at the time Flamer was sentenced was not a "weighing" scheme and, therefore, the existence of both an invalid and two possibly duplicative statutory aggravating circumstances does not require that the death sentences imposed be overturned.[7] However, Flamer argues that the statute was a weighing scheme and that the penalty must be overturned because it violates the dictates of *Clemons v. Mississippi,* 494 U.S. 738, 744, 110 S.Ct. 1441, 1446, 108 L.Ed.2d 725 (1990). In *Clemons,* the United States Supreme Court held that the consideration of an invalid aggravating circumstance was not harmless error under the traditional test presented in *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

The Respondent, contends that *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) should control this inqui-

---

**7.** The statute in effect at the time of Flamer's sentencing instructed that jurors, in considering the imposition of a death sentence, weigh "all relevant evidence in aggravation or mitigation" 11 Del.C. § 4209(d)(1)(b).

ry not *Clemons,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). According to the Respondent, Delaware's statute, like the one upheld in *Zant* is designed to provide the minimum constitutional guarantees required by the Eighth Amendment. The Respondent contends that as long as one of the aggravating circumstances is present, a jury is entitled to consider all evidence relevant to the imposition of a death penalty and not constricted to only those factors listed in the statute.

Thus, the Respondent argues that it is irrelevant that two of the aggravating circumstances were found to be duplicative and a third invalid for vagueness because a fourth aggravating circumstance had been established in a constitutionally permissible manner. The Respondent contends that once the jury found the existence of one aggravating circumstance it was permitted to consider all other relevant evidence even if that evidence did not amount to a specific aggravating circumstance as outlined by the statute. Thus, the Respondent concludes that any error that my have occurred in the penalty phase of the trial was harmless error.

According to the Respondent, in *Clemons,* the Mississippi legislature had provided a specified number of aggravating circumstances which could be considered in deciding whether to impose the death penalty and only those circumstances could be considered. Other evidence, regardless of its relevance to the sentencing phase, was to be excluded. As a result, Respondent argues the statute was not a threshold type statute where after a single aggravating factor is found all other evidence can be considered. Rather, Respondent asserts the Mississippi statute specifically narrowed the aggravating circumstances that could be considered. So, if one of those circumstances was found to be unconstitutional, the sentencing would be in violation of the Eighth Amendment or the state court charged with reviewing the sentence on appeal would have to re-weigh the specific aggravating circumstances provided by the statute to determine if the sentence could be sustained.

Flamer contends that the totality of circumstances presented here makes it clear that the imposition of the death penalty, in view of the instructions given the jury, violated Flamer's Fifth, Eighth and Fourteenth Amendment rights. Flamer disputes Respondent's argument that *Zant* controls. Specifically, Flamer contends that the Delaware statute is a weighing statute while the Georgia statute involved in *Zant* was not. Accordingly, Flamer argues that *Zant* is inapplicable to his case and at the very least he was entitled to a reweighing of the aggravating and mitigating factors by the Delaware Supreme Court to determine if the error caused by the trial court's instruction was harmless.

According to Flamer, the Respondent cannot meet his burden of proving that any error was harmless. Flamer contends that the instruction that was given by the trial court assigned a greater weight to those statutory aggravating factors than to other possible aggravating factors. Thus, according to Flamer, he is entitled to *de novo* review of this claim.

### 1. Discussion

 The findings of harmless error by the Delaware Supreme Court with respect to the aggravating circumstances instructions presents a mixed question of law and fact. Thus, the Court is required to conduct a *de novo* review of the record to determine if, in fact, the alleged error was harmless beyond a reasonable doubt. *Ruff v. Kincheloe,* 843 F.2d 1240, 1242 (9th Cir.1988); *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). In the guilt/innocence context, the harmless error standard is whether, absent the unconstitutional conduct, it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict. *United States v. Hasting,* 461 U.S. 499, 510–11, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96 (1983).

 The Court is bound by the findings of the state courts that Delaware's capital sentencing statute is not a weighing type of statute. With that principle in mind, the Court concludes that any error as a result of the aggravating circumstances included in

the charge to the jury at Flamer's trial was harmless error.

The statute—both in its literal language and as interpreted by the Delaware state courts—is clear in requiring that a jury need only find one of the enumerated aggravating circumstances. Under Delaware's scheme, once one aggravating circumstance is found to exist then the sentencing authority may consider all aggravating and mitigating circumstances whether or not they are statutorily defined. Flamer's jury found four aggravating circumstances. Although three were later determined to be unconstitutional or duplicative, one remained. The remaining aggravating circumstance was sufficient to permit the jury to determine, based on all of the evidence submitted, the appropriateness of the imposition of the death penalty in Flamer's case. *Accord Bailey v. Snyder*, 826 F.Supp. 804 (D.Del.1993) (holding that the Delaware statute is a non-weighing statute).

### E. THE CALDWELL CLAIM

Flamer contends that two phrases used by the trial court in its instructions at the end of the penalty hearing in his case violated the rule announced in *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), which was decided four months before Flamer's convictions became final. In *Caldwell* the United States Supreme Court held that "the Eighth Amendment prohibits the imposition of a death sentence by a sentencer that has been led to the false belief that the responsibility for determining the appropriateness of the defendant's capital sentence rests elsewhere." *Sawyer v. Smith*, 497 U.S. 227, 232, 110 S.Ct. 2822, 2826, 111 L.Ed.2d 193 (1990). In light of the *Caldwell* decision Flamer challenges the following instruction:

> Where the jury submits such a finding and recommendation, the Court will sentence the defendant to death. A finding by the jury of a statutory aggravating circumstance, and a consequent recommendation of death, if supported by the evidence, shall be binding on the Court.

Later, the Court stated the following:

> [y]our unanimous recommendation for the imposition of the death penalty, if sup-

ported by the evidence, is binding on this Court.

When Flamer objected to these instructions on appeal, the Delaware Supreme Court held that the phrase "if supported by the evidence" simply instructed the jurors that their decision must be based on the evidence, it did not suggest to them that the ultimate decision was vested in the trial court. *Flamer I*, 490 A.2d at 129.

The Respondent answers that Flamer's *Caldwell* challenge must fail for two reasons. First, the trial judge did nothing more than convey the statutory wording as it appeared in § 4209(d)(1). Second, Flamer cannot show that there was a reasonable likelihood that the jury took the phrase "if supported by the evidence" in a way that relinquished them from the responsibility of applying the death penalty. In support of this latter contention, the Respondent points out that the trial judge emphasized "[w]here the jury submits such a finding and recommendation the Court will sentence the defendant to death." Respondent also asserts that in charging the jury, the trial court emphasized that to impose the death penalty the decision of the jury would have to be unanimous. The trial court advised the jury that if they were unable to reach a unanimous decision, then the Court would be bound to impose a sentence of life imprisonment. Flamer contends that the language of the subject instruction gave the jury the impression that their recommendation in the penalty phase of his trial would be reviewed by the judge and thus, a recommendation of the death penalty was not solely within their province. According to Flamer, it is the Respondent's burden to show, under a totality of the circumstances, that the improper instruction had no effect upon the sentencing.

Flamer argues that the instruction given to the jury in his trial made it appear that the role of the jury was advisory in nature rather than binding on the court. Thus, Flamer concludes the situation is one in which *Caldwell* is clearly applicable. Further, Flamer claims the Respondent is unable, as a matter of law, to establish that the allegedly improper instruction had no effect on the penalty imposed upon him.

#### 1. Discussion

The determination of the validity of a single instruction cannot be done in "artificial isolation" but must be viewed in relation to the overall jury charge. *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Further, on habeas review, the authority of the Court to consider the jury instructions in a state proceeding is limited to circumstances where the improper instruction "so infected the entire trial that the resulting conviction violates due process." *Id.* It is not enough that the instruction was merely "undesirable, erroneous or even 'universally condemned.'" *Id.; Henderson v. Kibbe,* 431 U.S. 145, 156, 97 S.Ct. 1730, 1737, 52 L.Ed.2d 203 (1976). Where the instruction given by the state court "violates specific federal constitutional standards imposed on the states through the due process clause of the Fourteenth Amendment" then the federal court, on review, may consider the instruction. *Hallowell v. Keve,* 555 F.2d 103, 106 (3d Cir.1977).

The United States Supreme Court in *Caldwell* was faced with an entirely different situation than the one presented here. In *Caldwell,* the prosecutor argued to the jury that their decision was not binding on the trial court and that an automatic review of their decision would occur. 472 U.S. 320, 325, 105 S.Ct. 2633, 2637, 86 L.Ed.2d 231 (1984). Faced with that situation, the Supreme Court concluded:

> The Court has always premised its capital punishment decisions on the assumption that a capital sentencing jury recognizes the gravity of its task and proceeds with the appropriate awareness of its "truly awesome responsibility." In this case, the State sought to minimize the jury's sense of responsibility for determining the appropriateness of death. Because we cannot say that this effort had no effect on the sentencing decision, that decision does not meet the standard of reliability that the Eighth Amendment requires.

*Id.* at 341, 105 S.Ct. at 2646. In the present case the Court is persuaded that a review of the entire jury charge indicates that the jury was fully apprised of its responsibility for determining the appropriateness of a sentence of death and thus, the Court concludes the instructions given by the trial court comported with the requirements of the Eighth Amendment.

#### F. THE MITIGATING CIRCUMSTANCES ARGUMENT

Flamer contends that the trial court's charge to the jury violated the Eighth Amendment of the United States Constitution because it did not clearly instruct the jury that even if they found an aggravating circumstance to exist it did not necessarily follow that they had to impose the death penalty. In support of this claim, Flamer argues that the jury might have believed that it could not consider mitigating circumstances presented by Flamer since there was no specific instruction in this regard. The state supreme court twice considered this argument and twice held, as a matter of law, that the penalty instructions adequately communicated to the jury the discretionary nature of its sentencing authority. *Flamer I,* 490 A.2d at 127–28; *Flamer IV,* 585 A.2d at 751–53, 757–58.

The Respondent answers that Flamer would be unable to demonstrate that there is any reasonable likelihood that the jury did not understand its duty under the instructions given. Accordingly, the Respondent contends that under the totality of the circumstances, it cannot be found that the jury failed to consider the mitigating circumstances as presented by defense counsel on behalf of Flamer. The Respondent asserts that the mere fact that a penalty phase hearing was held and Flamer presented evidence on his behalf indicates the jury must have known that the decision of what punishment to be imposed rested with it.

Flamer makes no specific argument in response to the state's contention, however, he does assert some general arguments with respect to the instructions at the penalty phase. On the record presented, the Court concludes that there has been no showing that the jury did not understand its role in the penalty phase of Flamer's trial.

## G. THE COMPARATIVE DISPROPORTIONALITY CLAIM

 Flamer claims that his death sentences are inappropriate because they exceeded sentences imposed in other, similar cases under Delaware's capital punishment statute.

The Respondent answers that there is no constitutional requirement that the Court determine the propriety of Flamer's death sentences by comparing his sentence to those given to others convicted of first degree murder in Delaware. The Respondent argues that the Eighth Amendment does not require such comparisons. Respondent contends the Eighth Amendment only requires that a capital punishment scheme enacted by a state narrows the class of individuals who might receive the death penalty.

In this case, the state supreme court in its review of the sentence imposed upon Flamer did consider his sentence in comparison to others and determined that the sentences were neither arbitrary, capricious nor disproportionate to sentences imposed in seventeen other Delaware cases. The United States Constitution does not require this Court, on a habeas review, to go behind the conclusion of the state court so long as the review was done in good faith.

Thus, the Court concludes that the guarantees of the Eighth Amendment have been satisfied in Delaware's statutory scheme in that the Delaware statute properly narrows the class of persons upon whom a sentence of death may be imposed. *See McCleskey v. Kemp*, 481 U.S. 279, 306–7, 107 S.Ct. 1756, 1775, 95 L.Ed.2d 262 (1987); *Lewis v. Jeffars*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3101–02, 111 L.Ed.2d 606 (1990). Further, the Court concludes that the Court need not compare the sentences imposed upon other defendants.

## H. THE ABSOLUTE DISPROPORTIONALITY ARGUMENT

 Flamer contends that the imposition of the death sentence for the two felony-murder convictions is disproportionate to his culpability in the deaths of the Smiths. On direct appeal, the Delaware Supreme Court rejected this argument. *Flamer I*, 490 A.2d at 136–37.

The Respondent answers that under present case law, the degree of culpability necessary to uphold the death sentences is met if a person is a major participant "in the felony committed, combined with reckless indifference to human life." The Respondent argues that the evidence establishes that Flamer was a major participant.

Further, the Respondent contends that the findings made by the state courts regarding the degree of culpability present and its sufficiency to support the death penalty is a determination that is binding on this court in a federal habeas proceeding. *See* 28 U.S.C. § 2254(d).

Flamer contends that his involvement in the murders fails to raise his level of culpability to the level required by *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) as interpreted by *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). According to *Tison*, unless the accused is deemed a major participant or acted with reckless indifference to human life, the imposition of the death penalty is improper in the context of a felony murder. Here, Flamer contends that he was neither a major participant nor did he act with reckless indifference and thus, his death sentence must be set aside. Although Flamer admitted to being the first to stab Byard Smith, he now argues that his participation in the stabbings was not what caused death. Further, Flamer contends that he did not act with reckless indifference to human life because during the course of the relevant act, he withdrew, thus showing respect for human life by attempting to retreat.

Flamer contends that the Court is required to conduct a *de novo* review of the state court record to determine if the requisite factual finding as to his culpability has been made. If such a finding has been made then, Flamer admits he bears the burden of overcoming a presumption of validity.

### 1. Discussion

The cases that Flamer cites to support his claim that his sentence is disproportional to

his conduct are unpersuasive. In both *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) and *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), the United States Supreme Court was faced with deciding the appropriateness of imposing the death penalty when the petitioner had not taken action beyond an underlying offense. In other words, in *Enmund* and *Tison* the petitioner did not take any action in furtherance of the victim's death. In *Enmund* there was some evidence of the participation of the accused in a robbery, however, there was no evidence that Enmund was present or in anyway participated in the victims' murders. In *Tison,* the petitioners had assisted their father in escaping from prison and stopping the car of the victims in order to steal it, but the petitioners were not involved with any physical violence toward the victims.

The facts of the instant case are clearly distinguishable from *Enmund* and *Tison.* Flamer has acknowledged his participation in the stabbing of Byard Smith and the state courts found that his participation in the crimes was sufficient for finding him guilty of murder in the first degree with respect to the deaths of both the Smiths. Flamer claims that his participation is not sufficient to bring his culpability to the level required for the imposition of the death penalty because, according to him, he did not deliver the fatal blow.

The Court concludes that the record in this case clearly establishes that Flamer's participation in the robbery and murder of the Smiths is sufficient to bring his culpability, at a minimum, to the level of reckless indifference for human life.

As stated in *Tison:*

[w]e hold that the reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though not inevitable, lethal result.

*Tison,* 481 U.S. at 157–58, 107 S.Ct. at 1688. There can be no question that Flamer's con-

duct meets this standard. The stabbing of the victims by Flamer, whether representing the fatal blow or not, is sufficient to raise his culpability to the necessary level so that the imposition of the death penalty is appropriate under the United States Constitution.

## I. THE INEFFECTIVE ASSISTANCE OF COUNSEL ARGUMENTS

Flamer advances twelve separate claims that his counsel was ineffective. For his part, the Respondent has made eleven separate arguments in answer to Flamer's ineffective assistance of counsel claims.

### 1. Exhaustion

As a preliminary matter, the Respondent argues that Flamer has failed to exhaust his state remedies with respect to four of the ineffectiveness claims. *See* Flamer Petition, ¶¶ 24(a)(i), (vi), (vii) and (xi). The Respondent continues, that since Flamer has already litigated one state post-conviction relief claim and is unable to show cause and prejudice for his failure to raise these claims earlier he is now procedurally barred from doing so and the Court should not reach the merits of those claims.

In a habeas review, it is the Petitioner that bears the burden of establishing that exhaustion has been satisfied. *Landano v. Rafferty,* 897 F.2d 661, 668 (3d Cir.), *cert. denied* 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 23 (1990) *citing, Santana v. Fenton,* 685 F.2d 71, 73 (3d Cir.1982), *cert. denied,* 459 U.S. 1115, 103 S.Ct. 750, 74 L.Ed.2d 968 (1983); *Brown v. Cuyler,* 669 F.2d 155, 159 (3d Cir.1982) (per curiam). In order to satisfy the exhaustion requirement, a Petitioner must show that the claim has been fairly presented to the state courts which, in this context, requires the presentation of a substantially equivalent claim. *Id.* (citations omitted). In order for a claim to be considered substantially equivalent, both the legal theory and the facts upon which the Petitioner relies must have been presented to the state court. *Id.* at 669 (citations omitted). Only by assuring that the facts and legal theories have been fairly presented to the state court can the underlying goal of comity

between the state and federal systems be maintained. For purposes of the exhaustion requirement, so long as the state courts had an opportunity to decide the matter, after it was fairly presented, the highest court of the state need not have specifically addressed the claim for exhaustion purposes. *Sullivan v. Cuyler,* 723 F.2d 1077, 1082 (3d Cir.1983).

The ineffectiveness claims which Respondent argues have not been exhausted are: (1) the medical examiner claims; (2) the mitigating evidence claim; and (3) the failure to advise of the right to allocution during the penalty phase claim. With respect to the medical examiner claim and the mitigating evidence claim, the Respondent contends that Flamer now wants to rely on factual contentions that were not fairly presented to the state court.

The Court concludes that sufficient development of the facts and legal theories with respect to the medical examiner and mitigating evidence claims occurred in the state courts and thus these claims are exhausted. In this regard, the Court is bound by the findings of the state courts so long as they are adequately supported by the record and not in contravention of a constitutionally protected right.

With regard to the third claim, that Petitioner's trial counsel failed to advise Flamer of his right to allocution the Court concludes that this claim was not presented to the state courts in a manner that this Court could find meets the requirements of having been "fairly presented." Thus, the Court concludes the petitioner has failed to exhaust his state court remedies with respect to this claim. However, assuming the present petition were to be dismissed for failure to exhaust, the Court concludes that Flamer would be procedurally barred in the state courts from raising the claim. *See* Del.Super.Ct.Crim.R. 61(i)(2) (prohibiting review of successive petitions). It is the Court's view that Flamer would be unable to show the cause and prejudice necessary to permit a review of the claim. In this regard, there is no explanation provided by Petitioner for his failure to address this claim in the state court. Further the Court is convinced that Flamer would be unable to establish that prejudice resulted from the alleged failure of his counsel to advise him of his right to allocution. Trial Counsel apparently made a tactical decision regarding the penalty phase presentation and while his decision may not have been the most prudent or wise one available, there is no evidence in the record to support a contention that the failure to advise Flamer of his allocution right in anyway prejudiced Flamer's case.

The Court will now turn to the merits of Flamer's other ineffective assistance of counsel claims.

### 2. Standard of Review

To be successful in establishing a claim of ineffective counsel, a petitioner must establish that his attorney's representation fell below an objective standard of reasonableness and, had the attorney not failed the representation of the client, there is a reasonable probability that the result would have been different. *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984). To satisfy the first prong of *Strickland,* a petitioner must show that errors were made which were so serious as to deprive the petitioner of counsel as guaranteed by the Sixth Amendment. *Id.* at 687, 104 S.Ct. at 2064. In making its determination, a court is to look to the totality of the circumstances. *Id.* at 694, 104 S.Ct. at 2068. As stated in *Strickland:*

> The principles governing ineffectiveness claims should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial. As indicated by the "cause and prejudice" test for overcoming procedural waivers of claims of error, the presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment. An ineffectiveness claim, however, as our articulation of the standards that govern decision of such claims makes clear, is an attack on the fundamental fairness of the proceeding whose result is challenged. Since fundamental fairness is the central concern of the writ of habeas corpus no special standards ought to apply to ineffec-

tiveness claims made in habeas proceedings.

Finally, in a federal habeas challenge to a state criminal judgment, a state court conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. § 2254(d). Ineffectiveness is not a question of "basic, primary or historical fact". Rather, like the question whether multiple representation in a particular case gave rise to a conflict of interest, it is a mixed question of law and fact. Although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254(d), and although district court findings are subject to the clearly erroneous standard of Federal Rule of Civil Procedure 52(a), both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact.

*Strickland,* 466 U.S. at 697–98, 104 S.Ct. at 2070. Recently in *Reese v. Fulcomer,* 946 F.2d 247 (3d Cir.1991), *cert. denied* — U.S. ——, 112 S.Ct. 1679, 118 L.Ed.2d 396 (1992), the United States Court of Appeals for the Third Circuit indicated that it is proper for a district court to rely on the underlying facts as found by the state court with respect to the attorney's conduct so long as it is adequately supported. *Reese,* 946 F.2d at 254. Finally, on review, the Court is to presume that the attorney's conduct falls within the realm of objective reasonableness and it is the burden of the Petitioner to show otherwise. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

Having discussed the appropriate standard, the Court will now turn to each of the claims of ineffectiveness.

### *3. The Confession Claims*

■ Flamer asserts that his trial counsel and appellate counsel were ineffective in that they failed to raise a claim under *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) either during his trial or on direct appeal. As a result, Flamer argues his taped confession was admitted into evidence, although under the *Edwards* standard it likely would have been suppressed.

The Respondent argues that at Flamer's 1979 suppression hearing and at the time of his 1980 trial *Edwards* had not yet been decided, and thus, there was no failure on the part of Flamer's trial counsel to present an argument on *Edwards* grounds. According to the Respondent, counsel cannot be said to have failed to raise an argument when, at the relevant time, there is no indication such an argument would have been successful under the then existing legal principles. Further, the Respondent argues that appellate counsel, in deciding to pursue a Sixth Amendment claim rather than concentrating on a less viable *Edwards* claim made a tactical decision that does not call his conduct into question. Finally, according to the Respondent, even if Flamer could show the first prong of *Strickland* he is unable to establish prejudice.

The Court concludes that Flamer's claim predicated on the *Edwards* decision lacks merit. Flamer cannot establish that the performance of his trial and appellate counsel fell below objective reasonableness nor can he establish prejudice. At the time of his trial the course Flamer contends his counsel should have pursued was neither legally cognizable nor readily apparent. Likewise, on appeal, the decision of Flamer's counsel to pursue a Sixth Amendment claim rather than a claim under *Edwards* cannot be said to be unreasonable. In both instances, Flamer's counsel presented facts and legal argument that was certainly reasonable under all of the circumstances present. Thus, the Court concludes that counsel for Flamer conducted their defense of him within the standard of objective reasonableness. Moreover, the Court is persuaded that Flamer is unable to show that had the taped confession been suppressed under *Edwards* that a different result would have occurred. The record establishes that evidence available to the prosecutor, other than Flamer's confession, was substantial and clearly sufficient to support a conviction. For these reasons, the Court concludes that Petitioner's *Edwards* claims must be denied. ·

#### 4. The Medical Examiner Claim

■ Flamer has argued that his trial counsel should have elicited testimony with regard to the fact that the injuries suffered by the Smiths and that led to their deaths could have been caused by an unidentified third weapon, as opposed to the two known weapons used during the commission of the crime. Flamer argues that this would have supported his argument that Deputy, not Flamer was responsible for the injuries that led to death.

The state court, during a post conviction relief hearing, found that Flamer was relying on mere speculation as to what answers might have been elicited had such testimony been sought and, as a result, found such speculation insufficient to fulfill the element of prejudice. *Flamer IV*, 585 A.2d at 755. In an effort to address the reasoning of the state court as to the speculative nature of his claim, Flamer now alleges that the medical examiner would have conceded that a third weapon could have been involved. The Respondent answers that Flamer cannot now rely on testimony not previously presented to support his claim. Further, the Respondent contends that Flamer is foreclosed from presenting such evidence now, since he had the opportunity to do so in the state court and failed to.

Flamer further contends that the failure of his trial counsel to adequately cross-examine the medical examiner resulted in prejudice to him. According to Flamer's version, had trial counsel inquired as to the possible existence of another knife, the medical examiner undoubtedly would have conceded the possibility of a third weapon. Flamer argues had such testimony been elicited it would have corroborated his testimony that he had only stabbed his uncle five to seven times and that his uncle was not fatally wounded as a result of Flamer's participation. Flamer asserts such testimony would have shown that he did not stab his aunt at all. Thus, Flamer concludes, reasonable doubt would have been established in the minds of the jurors with respect to Flamer's culpability.

In response to the Respondent's allegation that any reference to a third knife is mere speculation Flamer argues that few of the wounds could definitely be attributed to the paring knife that Flamer allegedly had and that many of the wounds, according to the medical examiner, could have been caused by either knife.

After a thorough review of Flamer's argument and proffer, the Court concludes that it is bound by the factual determination of the state court that any possible testimony elicited from the medical examiner, had cross examination been more thorough, is purely speculative. *Flamer IV*, 585 A.2d at 755. Consequently, the Court concludes that Flamer is unable to establish the ineffectiveness of his counsel or prejudice resulting from the alleged failure of his trial counsel to more thoroughly cross-examine the state medical examiner.

#### 5. The Waiver of Closing Argument Claim

■ Flamer argues that his trial counsel was ineffective because he waived closing argument during the guilt-innocence phase of trial. On review, the Delaware Supreme Court found that such waiver was unusual, but under the circumstances of this case not unreasonable. *Flamer IV*, 585 A.2d at 754–55.

The Respondent argues that this claim cannot be the basis for a finding of ineffective assistance of counsel because at the time of trial the prosecutors were known for their "sandbagging" techniques and for this reason, trial counsel made a strategic decision not to make a closing argument. Further, the Respondent contends that Flamer is unable to show sufficient prejudice from his counsel's decision regardless of the efficacy of counsel's decision not to make a closing statement. First, the Respondent asserts that there is no reasonable assertion by Flamer that the presentment of a closing argument would have changed the guilty verdicts particularly in light of his confession. Second, given that Flamer took the stand at trial and told a story that differed from one he had given on numerous occasions before, he cannot now complain that his attorney erred or prejudiced him by not making a closing argument.

Flamer contends that the Court should take an objective look at the performance of his trial counsel during the guilt/innocence phase and acknowledge that his counsel abandoned his role as an advocate for Flamer. According to Flamer, the alleged abandonment is most evident in counsel's failure to make a closing argument during the guilt-innocence phase of the trial.

Further, Flamer contends that the state court record cannot adequately support the findings upon which the Respondent wishes to rely, and therefore, should not be permitted deference under 28 U.S.C. § 2254. Flamer alleges that the findings of the state court are not adequately supported because they are based solely on the testimony of trial counsel. According to Flamer, at the time of his testimony, trial counsel had:

> [e]very reason to impute some motivation to what otherwise would appear an utterly inexplicable act. After all, by the time [trial counsel] testified in postconviction proceedings his conduct during Flamer's case was the subject of examination by the Delaware Supreme Court Censor Committee ... The state court accepted the explanation lock, stock, and barrel. In doing so, it chose to ignore the fact that, if [trial counsel] had "carefully prepared" a closing statement, it would have been the only argument during the entire proceeding to which he had directed such attention.

(Docket Item 206, p. 84). Flamer goes on to describe the record as he perceives it was at the time in the state court system and why this record inadequately supports the decision reached by the state court.

Although the Court may find the arguments made by Flamer in this habeas petition compelling with respect to what the evidence was at the time the state court made the relevant findings, the Court is no less bound by the factual findings of the state court. The state court supported its finding by reference to the record and therefore for purposes of the pending habeas petition the Court concludes the findings were adequately supported and entitled to deference in this federal habeas proceeding. Thus, the Court is required to accept the finding that trial counsel had prepared a closing argument and the decision not to present it was a tactical one. On this record, there is no support for the contention that the conduct of trial counsel failed to meet objective reasonableness and the Court must conclude that his conduct was adequate.

### 6. The Advice About Testifying Claim

 Flamer claims that his trial counsel should have advised him not to testify at the guilt-innocence phase of the trial. On appeal of the post-conviction relief decision, the Delaware Supreme Court rejected this claim. *Flamer IV*, 585 A.2d at 755. Further the state courts found that Flamer was the one who made the ultimate decision regarding whether or not he should testify. *Id.* The state argues that the overwhelming evidence the state had to present against Flamer is further reason to support the decision to testify, therefore trial counsel was not incorrect in permitting Flamer to testify.

Flamer contends that trial counsel advised him to testify at trial and that there is no dispute as to this fact, although once he was called to the stand, Flamer concedes his testimony differed from the taped statement that had already been introduced. However, according to Flamer, the decision that his testimony would be different was not his alone and Flamer contends the state court record supports this assertion. Flamer now alleges that his trial counsel knew prior to his testifying that his testimony would be different from prior hearings and that counsel's examination of Flamer provided an opportunity to fully deny the admissions of involvement previously entered into evidence.

Moreover, Flamer claims his trial counsel had a policy that if a client did not take the stand it was almost a certainty that a guilty verdict would be returned. Thus, according to Flamer, rather than altering his policy and using a tactic that might assist in removing culpability from Flamer and place it on Deputy, his trial counsel negligently went ahead in conformity with his policy and failed to advise Flamer to either testify truthfully or to not take the stand.

As a result of the failure of his trial counsel, Flamer contends that the jury's view of

Flamer was more negative than necessary. Flamer contends this negative view was then carried over to the penalty phase of his trial and rendered him unable to testify about remorse in view of his trial testimony. Thus, according to Flamer, there exists a reasonable probability that had his trial counsel properly advised him with regard to testifying the outcome of the penalty phase would have been different.

Again, the Court is bound by the factual findings of the state court. The state court found that it was Flamer, not his trial counsel, who made the ultimate decision about whether Flamer should testify and the content of the testimony. *Flamer IV*, 585 A.2d at 755. In view of this finding, the Court concludes that Flamer has failed to show what was objectively unreasonable about his counsel's advice with regard to the decision to testify. On this record, the Court concludes that the advice of Flamer's trial counsel was not unreasonable and therefore not ineffective.

### 7. The Unified Theory of Defense Claim

According to Flamer, his trial counsel failed to develop a unified theory of defense and thus he was denied effective representation. The Respondent, however, contends that the state court found that Flamer's trial counsel did have a defense strategy, that of trying to contest the state's case while shifting the blame to Deputy. *Flamer* 585 A.2d at 755–756. According to the Respondent, this factual finding is binding on this court pursuant to 28 U.S.C. § 2254(d).

Flamer contends that at the Rule 61 hearing that he supplied testimony from the Chief of the Baltimore County Public Defender's Office that the performance of his trial counsel was deficient because counsel had not developed a unified defense that would permit synchronization between the guilt/innocence phase and the penalty phase of Flamer's case.

Flamer argues that both the Delaware Superior Court and the Delaware Supreme Court "missed the point" when considering this claim. The Supreme Court found that the evidence did not support the testimony of Flamer's expert "[trial counsel's] strategy was to raise a doubt in the State's case against Flamer by asserting that Deputy rather than Flamer was responsible for the homicides." *Flamer IV*, 585 A.2d at 755–56. Flamer claims this finding is not supported by the record because: (1) trial counsel allegedly admitted he had no defense theory at the Rule 35 hearing; (2) any defense trial counsel was allegedly attempting to construct he never implemented in his strategy; and (3) trial counsel, at the Rule 35 hearing, admitted he did not develop a plan for the penalty phase until after the conclusion of the guilt/innocence phase of the trial. Thus, Flamer asserts that there is no foundation for finding that there existed a unified theory of defense. Flamer concludes the failure to present a unified defense is far beyond the range of professionally acceptable conduct and further, it prejudiced Flamer because had a unified defense been presented there is a reasonable probability that Flamer would not have been convicted of intentional murder and would not have received the death penalty.

On the record presented, the Court concludes that a unified defense was presented and while trial counsel may not have been the best advocate, his performance was within the standards required by *Strickland*. Further, as found by the state court, the evidence against Flamer even absent his confession was so overwhelming as to prohibit any conclusion of prejudice on collateral review.

### 8. The Renewal of Suppression Motion Claim

 Flamer contends that his trial counsel was ineffective because he failed to make a renewed motion to suppress his confession when, during trial, Corporal Porter gave testimony that was inconsistent with that which he gave during the suppression hearing. According to Flamer, during the suppression hearing, Corporal Porter stated that Flamer had initiated the contact with Porter which led to the confession by Flamer, whereas, at trial Corporal Porter testified that he was actually the one to initiate the contact. *See Flamer I*, 490 A.2d at 113–14. The Delaware Supreme Court found that Flamer's trial

counsel was not obligated to ask the trial court to make another suppression determination even in light of the conflicting testimony. *Flamer IV,* 585 A.2d at 756.

The Respondent contends that Flamer cannot show, nor does he claim any, prejudice as a result of the failure of his trial counsel to renew the suppression motion. Secondly, the Respondent relates to the arguments he presented under the *Edwards* claim. He indicates that at the time of trial the law did not turn on the question of who initiated the contact, rather the only question was whether there was a voluntary waiver and therefore, no prejudice can be shown.

Flamer argues that following Corporal Porter's testimony at trial his counsel should have been alerted to the inconsistency between Porter's testimony at the suppression hearing and his testimony at trial, since trial counsel represented Flamer during both proceedings. Thus, Flamer contends that the failure of his counsel to renew the motion to suppress Flamer's statement fails to meet objective reasonableness and the first prong of *Strickland* is satisfied.

With respect to prejudice, Flamer does not argue that his counsel could have fashioned an *Edwards* argument as the Respondent asserts, in fact, according to Flamer, his counsel had not done sufficient investigation to permit such an argument to be made. However, upon hearing the differing testimony, Flamer contends that an argument could have been made that the taped statement should have been suppressed as a result of a police initiated interrogation after initial appearance by relying on cases already decided. As a result, Flamer contends that the failure of his counsel to renew the motion to suppress prejudiced him because there is a reasonable probability that the jury would not have convicted him of intentional murder had the taped statements not been introduced into evidence.

The Court concludes that even if Flamer's counsel had made a second motion to suppress following the trial testimony of Corporal Porter, there is no reasonable probability that a different outcome would have resulted in the case. Under the law in existence at the time, there appears to have been no reasonable basis for suppressing the instant statement and thus, the Delaware Superior Court would not have likely suppressed the statement. Although reasonable probability in effecting the outcome is less than a preponderance of the evidence but more than a mere showing of some conceivable effect on the outcome, *Strickland,* 466 U.S. at 693–94, 104 S.Ct. at 2068, Flamer is unable to demonstrate such a probability.

### 9. The Mitigating Evidence Claim

Flamer argues that during the penalty hearing his counsel failed to properly present mitigating evidence. There are six specific areas that Flamer claims that his counsel should have more fully developed and presented to the jury.

Flamer presented this claim during the state post-conviction relief proceedings however, he did not present evidence at the evidentiary hearing to support this claim. According to the Respondent, the failure of Flamer to present any new mitigating evidence turns the question of whether any prejudice existed into one of pure speculation and therefore cannot be supported. Absent testimony or evidence to support his position that other mitigating evidence could have been presented during the penalty phase, the only thing the state court had possible proof of was that Flamer's counsel should have tried to develop other evidence, although any proof of prejudice is wholly lacking. *Flamer IV,* 585 A.2d at 756–67. Due to the failure of Flamer to develop the record, the Respondent argues that Flamer is now barred from developing the record on federal habeas review.

Flamer argues that his counsel failed to investigate and develop mitigating circumstances to be presented to the jury during the penalty phase of the trial. Flamer, by way of argument, lists all of the possible areas that his counsel could have investigated and presented as mitigating circumstances, both with respect to Flamer and with respect to Deputy. Further, Flamer claims that his counsel failed to develop or argue any of the mitigating circumstances in his very brief closing argument during the penalty phase.

With regard to Flamer's failure to produce evidence at the state post-conviction relief evidentiary hearing Flamer contends that he was at that point relying on the state court record as it had been developed. According to Flamer, the record was so obvious as to his counsel's ineffectiveness that actual testimony at the post-conviction stage as to what could have been developed was unnecessary. Further, Flamer did present expert testimony as to what should have been developed and thus, Flamer contends the Court should be satisfied that the conduct of his trial counsel was below objective reasonableness. Finally, with respect to prejudice Flamer states:

> The prejudice to Flamer resulting from [trial counsel's] incompetence is established by the current record. It does not require additional evidence.... On the other hand, had [trial counsel] effectively portrayed Deputy as the career criminal he was, there is a reasonable possibility that the jury would have viewed Flamer's problems differently. Then the jury would not have sentenced 24 year old Flamer to death.

(Docket Item 206, pp. 92–93).

The Court concludes that there is insufficient evidence presented by Flamer to establish that any record could be developed to support his contentions regarding the existence of other mitigating factors. Merely stating that something might have been developed is too speculative in nature to meet the burden regarding what his trial counsel failed to present.

Further, the Court concludes that Flamer would be unable to show, on the record presented here, that even if the Court were to determine that the conduct of trial counsel fell below an objective standard of reasonableness, that a different result would have occurred.

### 10. The Penalty Hearing Closing Argument Claim

 Flamer claims that the closing argument of his counsel, due to its brevity, amounted to ineffective assistance of counsel. The Respondent asserts that brevity alone is insufficient to establish ineffectiveness and

that the state court determined that the comments of Flamer's counsel, although brief, fell within the realm of reasonable conduct. *Flamer IV*, 585 A.2d at 757. Further, the Respondent urges the Court to accept that given the brevity of the hearing overall trial counsel did all that was necessary under the circumstances and thus, it cannot be said that his representation of Flamer was ineffective.

The Court concludes that although brief, trial counsel's closing argument was not outside the parameters of reasonable conduct. The entire penalty hearing was very brief and although trial counsel could have been a stronger advocate on behalf of Flamer there is nothing to indicate he failed to present an adequate closing argument under the circumstances. Further, Flamer has not demonstrated that any prejudice resulted from the length of the closing statement.

### 11. The Penalty Hearing Instructions Claim

Flamer has claimed that his counsel should have requested additional instructions be given at the penalty hearing. The Delaware Supreme Court found that the instructions given were adequate and that Flamer failed to offer evidence to show that additional instructions would have altered the outcome. *Flamer IV*, 585 A.2d at 757–58. Respondent contends Flamer is unable to show that even if his counsel had requested certain instructions be given that there is any likelihood that those instructions would have been given, and therefore, Flamer cannot show prejudice. As a result, according to the Respondent, Flamer is unable to meet his burden of proof and this claim must be rejected.

Flamer, on the other hand, presents all of the instructions that he believes his counsel should have requested be given at the penalty phase hearing. He further contends that had those instructions been given there is "a reasonable probability that such jury instructions would have persuaded at least one member of the jury to impose life sentences, not the death penalty" and therefore he was prejudiced. (Docket Item 206, at 97).

There is simply no evidence that the failure of Flamer's counsel to request additional instructions during the penalty hearing brought his conduct below the standard of objective reasonableness. Therefore, the Court concludes Flamer has failed to establish the first prong of *Strickland.* Further, the Court concludes that Flamer, although alleging prejudice, has failed to meet his burden to establish that there is an objective likelihood that the result would have been different had the asserted instructions been given.

### III. CONCLUSION

For the reasons discussed, the Court concludes that Respondent's Motion for Summary Judgment on Petitioner's application pursuant to 28 U.S.C. § 2254 should be granted.

An appropriate order will be entered.